LANIER, Judge.
This action is a civil suit for damages alleging breach of a plea bargain in a criminal case. The trial court held a plea bargain in a criminal case is not a conventional obligation for purposes of the civil law and dismissed the suit. This devolutive appeal followed.
FACTS
The district attorney for the Nineteenth Judicial District Court for the Parish of East Baton Rouge (19th JDC) charged in a bill of information that the plaintiff, Ernest Lewis, “on or about the Seventh (7th) day of July, 1983, committed the offense(s) of FELONY THEFT violating Louisiana Revised Statutes 14:67, in that he committed theft of property from Honore’s Grocery with a value of greater than $100 but less than $500.00 ...” Lewis was arrested for this offense on August 25, 1983.[1] Lewis apparently was incarcerated in the East Baton Rouge Parish Jail (Jail) after his arrest.
On or before September 7, 1983, Lewis was indicted by the Grand Jury for the United States District Court for the Middle District of Louisiana for (1) receipt of a firearm by a convicted felon, (2) possession of a firearm by a convicted felon, and (3) making a false statement in connection with the acquisition of firearms. This three count indictment provided as follows:
COUNT I
On or about August 23, 1983, in the Middle District of Louisiana, ERNEST LEWIS, having been convicted on November 20, 1964, in the Criminal District Court for the Parish of Orleans, Louisiana, of forgery, a crime punishable by imprisonment for a term exceeding one year, did knowingly receive a firearm, that is, a Raven Arms, Model MP25, .25 caliber pistol, Serial No. 782427, which had been shipped and transported in interstate commerce; all in violation of Title 18, United States Code, Sections 922(h)(1) and 924(a).
COUNT II
On or about August 24, 1983, in the Middle District of Louisiana, ERNEST LEWIS, defendant herein, having been convicted on November 20, 1964, in the Criminal District Court for the Parish of Orleans, Louisiana, of forgery, a felony, did knowingly possess in commerce and affecting commerce, a firearm, that is, a Raven Arms, Model MP 25, .25 caliber pistol, Serial Number 782427, which firearm had previously moved in interstate commerce; all in violation of Title 18, United States Code, Section 1202(a)(1) (Appendix).
COUNT III
On or about August 23, 1983, in the Middle District of Louisiana, ERNEST LEWIS, in connection with his acquisition of a firearm, that is, a Raven Arms, Model MP25, .25 caliber pistol, Serial Number 782427, from the Outdoorsman, 9517 Cortana Place, Baton Rouge, Louisiana, a licensed dealer of firearms, did knowingly make a false and fictitious statement to said dealer, which statement was likely to deceive said dealer with respect to a fact material to the lawfulness of said acquisition of the fire *70 arm by ERNEST LEWIS under the provisions of Chapter 44, Title 18, United States Code, in that ERNEST LEWIS of a crime punishable by imprisonment for a term exceeding one year, whereas in truth and fact, as ERNEST LEWIS then and there well knew, he had been convicted on November 20, 1964, in the Criminal District Court for the Parish of Orleans, Louisiana, of forgery, in violation of La.R.S. 14:72; all in violation of Title 18, United States Code, Sections 922(a)(6) and 924(a).
The United States Marshal placed a detain-er on Lewis while he was in the Jail.
Apparently Lewis filed a motion to dismiss the federal indictments on the ground that he had been pardoned for his prior felony convictions.[2] On October 14,1983, a federal magistrate recommended that the motion be denied with the following rationale:
This matter is before the Court on defendant’s motion to dismiss.
Defendant submits that the three (3) count indictment which charges him with violations of 18 U.S.C. §§ 922(a)(6), 922(h)(1) and 18 U.S.C.App. § 1202(a)(1) should be set aside because defendant received full pardon and restitution of citizenship from John J. McKeithen, former Governor of the State of Louisiana on November 2, 1971.
Defendant’s motion to dismiss should be denied for the following reasons.
The pardon upon which defendant relies covers only a two count forgery conviction from the Nineteenth Judicial District Court, Parish of East Baton Rouge, Louisiana, and does not account for any other possible convictions.
The pardon does not expressly authorize defendant to receive, possess, or transport in commerce a firearm. Therefore, defendant does not fall within the exemption provisions of 18 U.S.C.App. 1203(2) and 18 U.S.C.App. § 1202 may apply if all other elements are proven. See United States v. Castellana, 433 F.Supp. 1309 (M.D.Fla.1977).
18 U.S.C. §§ 922(a)(6), 922(h)(1), which are included in Title IV, contain no exemptions for anyone who has been pardoned.
The federal district court judge apparently adopted this recommendation because Lewis was subsequently arraigned and plead guilty to all three counts.
On December 16, 1983, Lewis was sentenced by the federal district court to 5 years imprisonment on Count I of the federal indictment. On Count III, imposition of sentence was suspended and he was placed on probation for a period of 5 years to commence upon his release from federal custody on Count I. Count II was dismissed on the government’s motion. Apparently after these proceedings, Lewis was returned to state custody in the Jail.
On December 22, 1983, Lewis was arraigned on the state felony theft charge before Judge L.J. Hymel in the 19th JDC. The transcript of these proceedings reveals, in pertinent part, the following:
BY THE COURT:
Q I’ve indicated to your attorney, Mr. Shaheen, that should you plead guilty to this offense, I would sentence you to serve two years with the Department of Corrections. That two years to run concurrent with any and all other times you might be serving on other charges at this time. You understand that that will be the penalty you will receive if I accept your plea?
A Yes, sir.
*71 Q Other than that commitment, I understand the District Attorney’s Office has indicated that there may be some other criminal charges arising out of this incident, but they have indicated that they will not bill you on these other charges. Is that correct, Ms. Abide?
MS. ABIDE: Yes, sir.
Q You understand that also, sir?
A Yes, sir.
[[Image here]]
Q Based on sentence negotiations with counsel for the defendant as stated by the Court during the Boykin examination, it is the sentence of the Court that the defendant serve two years in the custody of the Secretary of the Louisiana Department of Corrections with credit for time served. Said time to run concurrent with any and all other times the defendant is presently serving.
The parties filed the affidavit of Judge Hymel into evidence herein as Joint Exhibit 1. In this affidavit, Judge Hymel stated the following concerning his intent in sentencing Lewis:
Pursuant to the Boykin, he sentenced the said Ernest Lewis to serve two (2) years with the Department of Corrections of the State of Louisiana, that two (2) years to run concurrent with any and all other times Lewis may be serving on other charges. In addition the District Attorney’s Office indicated that the said Ernest Lewis would not be billed on any other charges arising out of this particular incident. He further deposed that when he sentenced the defendant to two (2) years concurrent with any other sentences he may have been serving his intention was that the two (2) years would be served concurrent with the federal sentence which had just been pronounced, said sentence consisting of five (5) years in prison and an additional five (5) years on probation for a violation of federal firearms charges.
In a second affidavit denominated Joint Exhibit 3, the assistant district attorney who represented the State of Louisiana in the plea bargain stated the following:
It was her understanding that the defendant was to serve two (2) years with the Department of Corrections of the State of Louisiana, said sentence to be served concurrently with a federal sentence the defendant had recently received on firearms charges. It was her further agreement that the defendant would not be billed with any other charges arising out of the same incident.
In a third affidavit denominated Joint Exhibit 2, the assistant public defender who represented Lewis in the plea bargain stated the following:
It was his understanding and as such it was his communication to Ernest Lewis that, if he pled guilty he would receive the sentence of two (2) years with the Louisiana Department of Corrections, said sentence to run concurrently with a federal sentence which had been imposed just prior to the plea bargain. In addition, the plea bargain encompassed an agreement by the District Attorney of East Baton Rouge Parish not to prosecute the defendant further on other charges which may have arisen out of this incident.
He went on to depose that said plea agreement was intended to facilitate the petitioner serving five (5) years for his federal plea and the sentence in the Nineteenth Judicial District Court would be served concurrently with that sentence.
After these proceedings, Lewis was returned to state custody.
On February 29, 1984, the United States Marshal’s Service placed a detainer on Lewis, who was serving his state time in the Hunt Correctional Center.
By letter dated March 14, 1984, Robert K. Sibille, chief probation officer of the federal district court advised Lewis of the following:
Please accept this letter in answer to your letters to Judge Polozola, the Federal Bureau of Prisons, the U.S. Marshal’s Office and myself concerning your contention that you should be serving both federal and state sentences in a federal *72 institution. In answer to your questions I will first state the facts surrounding your problem then offer suggestions for its solution.
On December 16, 1983 you appeared in federal court before the Honorable Frank J. Polozola for sentencing after having entered a plea of guilty to three counts of a federal indictment charging you with violations of 18 USC 922(a)(6), 18 USC 922(h)(1) and 18 USC 1202(a)(1) appendix. As to count one you were sentenced to five years custody of the Attorney General. As to count three imposition of sentence was suspended and you were placed on probation for a period of five years to begin upon your release from prison. Your guilty plea as to count two was set aside upon your motion and agreement by the U.S. Attorney.
At the time of your guilty plea and your sentence in federal court you were removed from state custody by writ and then returned to state custody. According to the presentence report you were not serving a state sentence at the time but were in custody facing charges of forgery and felony theft. On December 22, 1983 you appeared in 19th Judicial District Court, East Baton Rouge Parish, before the Honorable L.J. Hymel and entered a plea of guilty to felony theft. The following sentence was levied by Judge Hymel: “the accused to be confined in the custody of the Secretary of the Department of Corrections, State of Louisiana, for a period of two years, credit for time served, and to run concurrently with any time currently serving”. You were then remanded to custody of the sheriff.
Please be advised the wording of this sentence does not set the stage for the state and federal sentence to run concurrently because you were not serving federal time when it was pronounced nor were you serving a state sentence, although the judge did give you the benefit of credit for time served in custody.
You seem to think it was the intension [sic] of Judge Hymel to make his sentence concurrent with the federal sentence. That may be the case and he may have been under the impression you were already serving your federal sentence. However, it does not appear to me that the Department of Corrections is authorized by the wording of this sentence to release you to federal custody.
By letter dated March 20, 1984, Carmen Smith, the administrative systems manager of the South Central Regional Office, Federal Prison System, U.S. Department of Justice, advised Lewis as follows:
This is in response to your letter requesting us to check your Federal Sentence to verify that it is to run concurrent with your State Sentence.
According to your Federal Judgement [sic] and Commitment, your Federal sentence is for five years Probation to commence upon release from your State confinement.
This five years sentence is consecutive to the State sentence; therefore, your Federal sentence cannot begin until you are released from State custody.
On February 3, 1985, the Louisiana Department of Corrections released Lewis into the custody of the U.S. Marshals Service and he commenced serving his federal sentence.
Lewis filed a request for administrative relief with the warden of the Seagoville Federal Correctional facility asserting he was being illegally confined and the judgment against him was void. The warden found that when Lewis was sentenced in federal court he was not serving either a state or federal sentence and he was not received into federal custody for service of his federal sentence; instead, he was returned to state custody and thereafter sentenced to serve a state sentence. The warden further found that at the time Lewis was sentenced to serve state time he was not serving his federal sentence. Based, in part, on the these facts the warden denied Lewis’ claim on July 22, 1985.
Lewis appealed the warden’s decision to the Regional Director of the Bureau of Prisons of the United States Department of Justice. On September 12, 1985, Lewis’ *73 request for relief was denied with the following rationale:
This is in response to your Regional Appeal, SEA-0102-85, in which you allege the Federal government lost control or jurisdiction of you when they returned you to State custody after having removed you on a Federal Writ of Habeas Corpus for prosecution on Federal charges.
You were in primary State custody at the time you were removed via a Federal Writ for prosecution on Federal charges. At this time, you were considered to be in secondary Federal custody and on “loan” status from the State. You were sentenced to 5 years custody of the Attorney General and returned to the State per standard instructions contained on the Federal Writ. This mutual understanding between sovereigns is called “comity” and is a legal and common practice. Your return to the State did not cause the Federal government to lose the right to take custody of you for service of your Federal sentence when you were released from your State sentence. Your Federal sentence has been computed in accordance with Title 18, USC 3568, which provides for a Federal sentence to begin running when a person is received into Federal custody for service of that sentence.
The response to your BP-9 by staff at Seagoville has been determined to be accurate and is upheld in its entirety. Your request for relief is DENIED.
Lewis commenced post-conviction proceedings in state court.[3] He asserted that in his state plea bargain agreement he was promised that his state sentence would be served concurrently with his federal sentence, the federal authorities refused to do so, and he was entitled to specific performance of the plea bargain agreement. He did not seek withdrawal of his guilty plea or nullification of the plea bargain. The trial court denied relief. On January 27, 1986, this court also denied relief with the following rationale:
WRIT DENIED: The relief sought by relator is not within the power of this Court or the 19th Judicial District Court to grant. However, construing relator’s claim liberally, if he wishes to request reversal of his state conviction and sentence (and a re-trial), he may file an application for post-conviction relief in compliance with La.C.Cr.P. art. 926.
Lewis commenced a second post-conviction proceeding in state court again seeking enforcement of the plea bargain. In addition, he sought compensation for breach of the plea bargain. The trial court denied relief. On September 30, 1987, this court also denied relief with the following rationale:
WRIT DENIED: It is not within the power of the 19th Judicial District Court, nor this Court, to compel federal authorities to grant relator credit for time served in a state penal institution. With regard to relator’s request for compensation, any such claim must be made pursuant to a civil petition.
This suit was filed on April 27, 1989.
CIVIL CAUSE OF ACTION FOR BREACH OF A CRIMINAL PLEA BARGAIN
(Assignment of error II)
The trial court ruled that “a plea bargain does not create a conventional obligation” and dismissed Lewis’ claim for compensation. On appeal Lewis asserts that “[T]he District Court erred manifestly in its decision that the plea bargain did not create a contractual relationship between the parties.”
The subject matter jurisdiction of the courts in the judicial branch of state government is divided in the Louisiana constitution into three categories: (1) civil, (2) criminal and (3) juvenile.[4] La. Const. of *74 1974, art. V, §§ 5, 10, 16, 18 and 19. The charge of theft in violation of La.R.S. 14:67 brought against Lewis in the bill of information is clearly a criminal matter. As a criminal matter, it is controlled by the substantive criminal law and the Louisiana Code of Criminal Procedure. Pleas in criminal matters are provided for in La.C.Cr.P. arts. 551-561. A plea of guilty is one of the four kinds of pleas authorized by La. C.Cr.P. art. 552. Plea bargaining is defined in Black’s Law Dictionary p. 1037 (5th ed. 1979) as follows:
Plea agreement. See Plea bargaining.
Plea bargaining. The process whereby the accused and the prosecutor in a criminal case work out a mutually satisfactory disposition of the case subject to court approval. It usually involves the defendant’s pleading guilty to a lesser offense or to only one or some of the counts of a multi-count indictment in return for a lighter sentence than that possible for the graver charge. Plea bargaining procedures in the federal courts are governed by Fed.R.Crim.P. 11(e).
(Emphasis added)
Under the substantive criminal law, there are only two alternative remedies available for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Chalaire, 375 So.2d 107 (La.1979); State v. Wade, 364 So.2d 575 (La.1978); State v. Greer, 572 So.2d 1166 (La.App. 1st Cir.1990). At the time Lewis sought specific performance of his state plea bargain in state court, he had already served his state sentence, and the State had no authority to compel the federal authorities to give him credit for his state time on his federal sentence. In this procedural posture, the State could not give specific performance and the question of granting that remedy was moot. Lewis has never asked for the remedy of nullification or withdrawal of the guilty plea (with the attendant reinstatement of the parties in their pre-plea positions).
Obligations are civil matters controlled by the substantive civil law. They are provided for in the Louisiana Civil Code. La.C.C. arts. 1756-2057. An obligation is a civil legal relation. La.C.C. art. 1756. In S. Litvinoff, Expose’ Des Motifs for West’s Louisiana Statutes Annotated Civil Code Volume 6, p. 2 (1987) appears the following:
This chapter recognizes the fundamental principles of the law of obligations. The term “obligation” is defined, and the sources and general effects of obligations are identified. Article 1759 recognizes the principle that obligations must be performed in good faith, a principle inextricably rooted in civilian tradition. The language used to define the term “obligation” has been adjusted to make it clear that an obligation is a legal relation rather than a mere duty to perform. See Article 1756. In the Louisiana Civil Code of 1870, the term “obligation,” in its general sense, was made synonymous with duty, whereas “civil obligation” was defined as a “legal tie.” See C.C. Arts. 1756 and 1757(3) (1870). This dual approach has been eliminated. The revised articles define the term “obligation” to include all obligations recognized at law, whether they be civil or natural.
(Emphasis added)
Comment (b) for La.C.C. art. 1756 provides as follows:
This Article makes it clear that an obligation is a legal relationship rather than a mere duty to perform. In the Louisiana Civil Code of 1870, “obligation,” in general, is made synonymous with “duty,” while a “civil” obligation is defined as a “legal tie.” C.C. Arts. 1756 and 1757(3) (1870). This dual approach *75 has been eliminated in this revision in order to confine the code definition to obligations that, whether civil or natural, are recognized at law.
(Emphasis added)
Comments (b) and (c) for La.C.C. art. 1760 provide as follows:
(b) In this revision the word “obligation”, without more, is always synonymous with “civil obligation,” that is, an obligation which is enforceable by legal action. The scope of the general term has been so much reduced in this revision that it is no longer necessary to insist that it always be preceded by the appropriate modifier.
(c) The reference to the enforceability of civil obligations found in C.C. Art. 1757(3) (1870) has been eliminated. That principle is stated in Chapter 1 of this Title.
(Emphasis added)
Although the law of obligations (contracts) can be used by analogy to analyze the legal relations of the parties to a plea bargain, the validity of the plea bargain and the remedies for breach of it are controlled by criminal substantive and procedural law.[5] See State v. Caminita, 411 So.2d 13 (La.1982).
The trial court correctly held that a plea bargain in a criminal case is not a conventional obligation. Accordingly, Lewis has no civil cause of action for compensation for breach of the plea bargain.
This assignment of error is without merit.[6]
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Lewis is cast for all costs. La.C.C.P. art. 5188.
AFFIRMED.
SHORTESS, J., concurs with reasons.

. The United States Department of Justice and Louisiana State Police criminal records (rap sheets) in the record on appeal show that at this time Lewis was arrested for 10 counts of forgery, 8 counts of felony theft, 2 counts of misdemeanor theft, aggravated assault, resisting an officer and illegal carrying of a weapon.

. Lewis’ rap sheets show he was convicted of desertion and sentenced to serve 6 months in 1957; he was convicted of obtaining money under false pretenses by check and sentenced to serve 9 months in 1961; he was convicted of forgery and sentenced to serve 2 years in 1964; and he was convicted of forgery and sentenced to serve 2 years in 1968. Lewis' rap sheets and copies of court minutes in the record show that on June 16, 1983, he plead guilty to 2 counts of issuing false inspection certificates and 4 counts of illegal charging of inspection certificates in the 18th JDC, Parish of West Baton Rouge, and was sentenced; on June 21, 1984, he plead guilty to 5 counts of theft in the 18th JDC, Parish of West Baton Rouge, and was sentenced; and on July 18, 1984, he plead guilty to 5 counts of theft in the 18th JDC, Parish of Iberville, and was sentenced.

. Pursuant to the authority of La.C.E. art. 201(A) and (B)(2), we take judicial notice of our own records. State v. Valentine, 397 So.2d 1299 (La.1981). See former La.R.S. 15:422(7).

. There may be a jurisprudentially created fourth category. In Matter of American Waste & Pollution Control Co., 588 So.2d 367, 373 (La.1991) the court observed that “We find that DEQ [permit] determinations are not civil mat *74 ters within the meaning of La. Const, art. V, § 16(A).” DEQ permit determinations (and other similar administrative proceedings) do not appear to be criminal or juvenile matters for purposes of La. Const. of 1974, art. V. If DEQ permit determinations are not civil, criminal or juvenile matters for purposes of La. Const, of 1974, art. V, then they must fall into a fourth innominate category.

. Conversely, although substantive criminal law can be considered when defining a civil tort duty, it is not controlling in determining civil tort liability. Gugliuzza v. KCMC, Inc., 593 So.2d 845 (La.App. 2d Cir.1992) and cases cited therein.

. In assignment of error I, Lewis asserts that "[T]he District Court erred manifestly in finding that plaintiff had an obligation to get his sentence amended so as to reflect what had actually occurred in the plea bargain.” Because of our ruling on assignment of error II, it is unnecessary to rule on assignment of error I.