JzGUIDRY, Judge.
The defendant, Nelson Dan Taylor, Jr., was charged by indictment number 4-97-562 with one count of forcible rape, a violation of La.R.S. 14:42.1, and with one count of aggravated burglary, a violation of La.R.S. 14:60. Under indictment number 5-96-802, he was also charged with two counts of aggravated rape (counts I and IV), violations of La.R.S. 14:42, and with four counts of aggravated burglary (counts II, III, V, and VI), violations of La.R.S. 14:6o.[1] In regard to both indictments, the defendant was Boykinized, entered guilty pleas, and was sentenced, pursuant to plea bargaining at the same hearing. On counts I and IV of indictment number 5-96-802, the defendant was permitted to plead guilty to the responsive offenses of forcible rape. He pled guilty as charged to the remaining six offenses.
The defendant was sentenced as follows on indictment number 5-96-802. Count I: 40 years at hard labor, of which 25 years was without benefit of parole, probation, or suspension of sentence; count II: 10 years at hard labor, concurrent with the sentence imposed on count I; count III: 10 years at hard labor, consecutive to the sentences imposed on counts I and II; count IV: 40 years at hard labor, of which 25 years was without benefit of parole, probation, or suspension of *175 sentence, concurrent with the sentences imposed on counts I, II, and III; count V: 10 years at hard labor, concurrent with the sentences imposed on counts I, II, III, and IV; count "VT: 10 years at hard labor, concurrent with the sentence imposed on count III, and consecutive to the sentences imposed on counts I, II, IV and V. On indictment number 4-97-562, the defendant was sentenced as follows. Count I: 40 years at hard _Jjlabor, of which 25 years was without benefit of parole, probation, or suspension of sentence, concurrent with all other sentences on all other counts in both indictments; count II: 10 years at hard labor, concurrent with indictment number 4-97-562, count I, and concurrent with all other counts in indictment number 5-96-802.[2] On each sentence, the defendant was given credit for time served. He moved for reconsideration of sentence, but the motion was denied. He subsequently moved to amend the motion to reconsider sentence in case number 5-96-802 to include case number 4-97-562, and the motion was granted.[3] He now appeals, designating three assignments of error.

FACTS

Due to his guilty pleas, there was no trial and no testimony concerning the defendant’s crimes. However, the State set forth a factual basis for its charges against the defendant at his Boykin hearing. In response to questioning from the court, the defendant indicated that he did not disagree with the State’s statement of factual bases.
The State set forth the following factual bases for the counts under indictment number 5-96-802. Regarding counts I and II: on November 15, 1995, a fifteen-year old girl was awakened in her bedroom by the presence of an unknown assailant wearing a mask, The assailant straddled the girl, and she screamed and attempted to fight him off her. The assailant told her to shut up. The girl ceased fighting him after the assailant held a gun to her head. The assailant covered the girl’s eyes with masking tape. He then put l4his penis in the girl’s mouth and then vaginálly raped her. A rape examination of the victim revealed the presence of sperm. Additionally, police investigation of the crime scene uncovered the tape used on the girl, some unused tape, and a knife that did not belong to the residents of the home and which had not been present when the residents went to bed.
Regarding count III: on November 17, 1995,[4] a seventeen-year old girl was awakened in her bedroom by the presence of an unknown assailant wearing a monkey mask. The assailant straddled the girl. She screamed and he told her to shut up. The assailant pressed a sheet against the girl’s mouth in an attempt to keep her quiet, but the girl’s father heard the noise and interrupted the assailant. The assailant jumped up and escaped from the scene after the girl’s father hit him. Police investigation of the crime scene uncovered a gun and a piece of sheet, neither of which belonged to the residents of the home.
Regarding counts iy and V: on March 12, 1996, a sixteen-year old girl was awakened in her bedroom by the presence of an unknown assailant waving a flashlight around. • She heard tape being pulled from a roll and saw the assailant pull the covers off of her. The assailant was armed with a large knife. The assailant got on top of the girl and told her to be quiet. He put the knife to her throat and pulled her pants down. The assailant taped the girl’s eyes and mouth closed. He placed *176 his penis in her vagina, performed oral sex on her, and forced her to touch his penis.
Regarding count VI: on April 17, 1996, a sixteen-year old girl was awakened in her bedroom by the sound of someone walking in her bedroom. 15The assailant fled the scene after the girl screamed. Police investigation of the crime scene uncovered a knife blade and a roll of mailing tape, neither of which belonged to the residents of the home.
The defendant, a student at Baton Rouge High School, as were some of the victims, was developed as á suspect. His fingerprints matched those found on the used tape, the unused tape, and the knife found at the crime scene involved in counts I and II. The defendant’s fingerprints matched those found on the inside and outside of the bathroom windows of the crime scene involved in counts IV and V. The fingerprints also matched those found on the knife at the crime scene involved in count VI, and on the inside and outside of a sliding glass window at the crime scene involved in count VI. A search of the defendant’s, residence uncovered a piece of sheet matching that found at the crime scene involved in count III. A ski mask was found in the defendant’s vehicle.
The State set forth the following factual bases for the counts under indictment number 4-97-562. Regarding count I: on October 19, 1995, a seventeen-year old girl was awakened by a black male standing at the foot of her bed. The intruder taped' the girl’s head, eyes, and mouth, held a gun to her head, removed her underclothing, and told her to be quiet. He then vaginally raped her. A rape examination of this victim revealed the presence of sperm and lacerations to her vagina. Police investigation of the crime scene uncovered a small black mask that did not belong to the residents of the home.
Regarding count II: on November 29, 1995, a twelve-year old girl was awakened by a light being turned on in her bedroom. The assailant sat on top of the girl, wearing a mask with a large red nose. The girl screamed and the assailant told her that if she screamed again, he would kill her. The leassailant taped the girl’s head, eyes, and throat. The assailant ran away after hearing the girl’s brother. Police investigation of the crime scene uncovered a large bread knife under the girl’s pillow that did not belong to the residents of the home and which had not been present prior to the intrusion, and a torn piece of pillowcase.
The defendant was developed as a suspect for the crimes under indictment number 4-97-562, due to the similarities between these crimes and the crimes under indictment number 5-96-802. Additionally, the defendant was familiar with one of the residents of one of the homes involved. The State also indicated that it had additional information and serology results which proved the defendant’s identity as the assailant involved in counts 1[5] and II.

ASSIGNMENTS OF ERROR AND ARGUMENTS

The defendant lists his assignments of error as follows:
(1) The trial court committed error when it sentenced the defendant to an unconstitutional sentence by failing to review information relevant to sentencing the individual defendant;
(2) The trial court committed error when it allowed a minor to waive his rights in a plea bargain without subjecting the plea bargain to strict judicial review for appropriateness relative to the individual defendant and the crime committed;
(3) The trial court committed error when it allowed the juvenile defendant, a minor, to waive the educational good time he was entitled to earn under the law.
There is only remote correlation, in either order or substance, between the above assignments and the defendant’s arguments in brief concerning the above assignments. The arguments are as follows: (1) that the defendant lacked capacity to agree to the plea bargain because he was a minor; (2) that |7the sentence imposed upon the defen *177 dant was excessive because the district court did not evaluate it for “appropriateness;” (3) that the sentence imposed upon the defendant was excessive for permitting the waiver of “educational good time;” and (4) that the sentence imposed upon the defendant was excessive for failing to consider the defendant’s “mental illness.” We address the arguments as they appear in brief.
In regard to his first argument, that he lacked the capacity to plea bargain because he was a minor, the defendant relies upon the fact that at the time he signed the plea bargain at issue herein, he “was a minor who could not legally sign and bind himself on a contract for a portable television set.”[6] This argument is res nova.
Louisiana civil law provides that majority is attained upon reaching the age of eighteen years and that unemancipated minors do not have the capacity to contract. See La.Civ. Code arts. 29, 1918. Louisiana civil law also provides, “A contract by an unemancipated minor may be rescinded on grounds of incapacity except when made for the purpose of providing the minor with something necessary for his support or education, or for a purpose related to his business.” La.Civ. Code art. 1923. The purpose of these provisions is to protect minors from being taken advantage of by those who attempt to gain financially by doing business with them. See Deville v. Federal Savings Bank, 93-1853 (La.4/11/94), 635 So.2d 195.
This court previously recognized that civil law minority does not prevent a seventeen year old from being treated as an adult for criminal purposes because “very different concerns are involved in criminal and civil matters.” State in Interest of Lewis, 377 So.2d 1322, 1325 (La.App. lst_|8Cir.l979). This court also recognized that although the civil law of obligations can be used by analogy to analyze the legal relations of the parties to a plea bargain, the validity of the plea bargain and the remedies for breach of it are controlled by criminal substantive and procedural law. Lewis v. State Through Dept. of Public Safety and Corrections, 602 So.2d 68, 75 (La.App. 1st Cir.), writ denied, 604 So.2d 1312 (La.1992).
As a matter of criminal law, La. Const, art. Y, § 19 provides that persons who commit crimes prior to their seventeenth birthday are generally entitled to the protections of special juvenile procedures. However, the same provision authorizes the legislature to exclude juveniles arrested for certain enumerated offenses from the jurisdiction of the juvenile courts and allows the legislature to lower the maximum ages of persons to whom such procedures will apply. See State v. Hamilton, 96-0107, p. 2 (La.7/2/96), 676 So.2d 1081, 1082. In the instant case, when the defendant was indicted for aggravated rape, he was automatically excluded from the jurisdiction of the juvenile courts for all subsequent procedures concerning that charge. La.Ch.C. arts. 305(A)(1)(a),[7] 305(B)(4). When the defendant was indicted for aggravated burglary and forcible rape, rather than being charged with committing these offenses by petition filed by the district attorney in the juvenile court, the defendant was excluded from the jurisdiction of the juvenile courts for all subsequent procedures concerning these charges. La.Ch.C. arts. 305(B)(1)(a), 305(B)(3), 305(B)(4). Upon his exclusion from the juvenile courts to face the charges against him, the defendant came under the jurisdiction of the “appropriate court exercising criminal jurisdiction” for “trial as an adult.” See La.Ch.C. art. 305(B)(4). Accordingly, the ^defendant’s capacity to accept a plea bargain negotiated between his counsel and the State had to flow as a necessary corollary to his exposure to severe criminal sanction as a juvenile facing trial as an adult in district court. Were this not the case, a juvenile being tried as an adult who was offered a plea bargain by the *178 State would be deprived of the opportunity to act in his own best interest by reducing his sentencing exposure through plea bargaining. This argument is without merit.
We are unable to reach the merits of the defendant’s remaining arguments because they all attack sentences imposed in conformity with a plea agreement set forth in the record at the time of the respective pleas. A defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. La.C.Cr.P. art. 881.2(A)(2); see State v. Young, 96-0195, p. 5 (La.10/15/96), 680 So.2d 1171, 1174.
CONVICTIONS AND SENTENCES AFFIRMED.

. The instant appeal concerns indictment number 5-96-802. We address indictment number 4-97-562 in State v. Taylor, 97 KA 2048 (La.App. 1st Cir. 1998), 716 So.2d 178, also decided this date.

. The court minutes indicate that the sentence for count II of indictment 5-96-802 was 10 years at hard labor, concurrent with sentences on all other counts on both indictments. However, at the sentencing hearing, the sentence imposed was 10 years at hard labor, concurrent with indictment number 4-97-562, count I, and concurrent with all other counts in indictment number 5-96-802. In the event of a discrepancy between the minutes and the transcript, the transcript controls. State v. Lynch, 441 So.2d 732, 734 (La.1983).

. The district court retains, after appeal, the jurisdiction to correct an error or deficiency in the record. La.C.Cr.P. art. 916(2); State v. Sparks, 528 So.2d 160 (La.1988).

. At the Boykin hearing, the State set forth that this offense occurred on "November 17, 1995," whereas the indictment specified the date as “November 27, 1995.” The correct date of the offense was not essential to the offense. See La.C.Cr.P. art. 468.

. At the Boykin hearing, the State set forth that the defendant was the uninvited intruder on "March 19, 1995,” whereas the indictment specified the date as "October 19, 1995.” The correct date of the offense was not essential to the offense. See La.C.Cr.P. art. 468.

. The defendant was Boykinized, entered guilty pleas, and was sentenced pursuant to plea bargain, on April 25, 1997. He gave his age as "seventeen” at that time. This was consistent with the date of birth listed on the indictment. There was no evidence that the defendant had been emancipated.

. The fact that the defendant did not plead guilty to aggravated rape, but rather pled guilty to the responsive offense of forcible rape, did not affect the jurisdiction of the district court. La.Ch.C. art. 305(D).