NOT DESIGNATED FOR PUBLICATION

Nos. 114,287
114,288

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTINA M. LUDES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed October 14, 2016. Appeal dismissed.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MCANANY and GARDNER, JJ.

*Per Curiam*: This appeal is from two consolidated cases that were the subject of one plea agreement. Christina Ludes raises three issues relating to her sentence: that the State breached the plea agreement by statements made at her sentencing and probation revocation hearing; that the district court abused its discretion in revoking her probation; and that the district court violated her constitutional rights by using her prior convictions in calculating her criminal history score. Without reaching the merits of these arguments, we find the appeal moot.

1

*Factual and procedural background*

In her 2013 case, Ludes pleaded guilty to felony theft and was sentenced to 12 months' probation with an underlying 10-month prison sentence. The State twice moved to revoke her probation due to several violations, including new criminal charges. Ludes stipulated to having violated her probation.

In her 2014 case, Ludes was charged with another felony theft and agreed to plead no contest in exchange for the State's promise to recommend probation in that case and to recommend reinstatement to probation after a 120-day dunk in prison in the 2013 case. In the 2014 case, probation was the presumptive sentence based on her criminal history. But Ludes' commission of this property crime while she was on felony probation, and her status as a repeat offender based on the requisite prior convictions of specific property crimes, moved her to presumptive prison.

The plea agreement stated:  "The State agrees to recommend probation in [the 2014] case. [In the 2013 case], the State will agree to reinstatement on probation after [Ludes serves] a 120-day DOC sanction." Ludes' counsel filed a motion for a downward dispositional departure to probation and argued that substantial and compelling reasons existed for her to be placed on probation. The State did not object to the motion.

At sentencing, the court heard from Ludes, her counsel, and her court services officer (CSO). Ludes' counsel argued that probation was appropriate for a variety of reasons:  She would not be a safety risk in the community, treatment in the community was sufficient, Ludes could be "properly and adequately supervised" in the community, her offenses were nonperson and nonviolent, Ludes was repentant, and she would submit to any kind of recommended treatment.

However, the CSO disagreed. He itemized Ludes' continued commission of similar crimes, her flagrant attitude toward court personnel, and her poor performance on probation in the 2013 case and prior cases, including the fact that she had not reported for the last year. He concluded Ludes was "not amenable to probation" and asked the court to remand her to serve her underlying sentences on both cases.

The court then heard from the State. Regarding sentencing for the 2014 case, it stated: "As the plea tender contemplated, the State *would not object* to placement on probation . . . . That being done and said, I would just note for the record that *the defendant does have a relatively lengthy criminal history with similar type crimes*." (Emphasis added.) The court twice asked the State if it was recommending probation, and the State twice replied it was not objecting to probation.

Regarding the probation revocation disposition for the 2013 case, the State told the district court, "the plea tender did contemplate that the defendant would serve the 120-day prison dunk, and the State would request that, *at a minimum*, the Court require that of her before reinstating her on probation." (Emphasis added.).

The State concedes the phrase—"at a minimum"— was stated in error. The italicized statements form the basis for Ludes' argument that the State breached the plea agreement. Ludes raised no objection to the State's comments at the time of sentencing.

The district court's statements at the time of sentencing reflect its understanding that the State was "requesting" that Ludes be placed on probation pursuant to the terms of the plea agreement.

> "Well, Ms. Ludes, the Court has reviewed the motion for downward/dispositional departure, and the Court has considered the arguments made in favor of your motion, including that you accepted responsibility for your behavior. And the Court understands

that the State is also requesting you be placed on probation pursuant to the terms of the plea agreement.

Nonetheless, it denied probation based on the defendant's failure to report and her extensive criminal history, stating:

"And the Court considered the other arguments made by your attorney. But I simply do not find in your case that there are substantial and compelling reasons for the Court to place you on probation in this case. Unfortunately, if you can't—if you're not bothering to report in to your probation officer when you already were on probation, I don't see why you should—say now that you want to be on probation, when, clearly, you didn't want to be on probation if you weren't even bothering to report.

"And I'm looking at your criminal history. And you have 27 convictions, if I counted correctly. You have seven previous convictions for theft. You have two previous convictions for attempted theft, along with another—a number of other convictions. . . .

"And if you're not bothering to report in for probation, I just do not find in this case that there are substantial and compelling reasons for this Court to place you on probation."

Accordingly, in both cases, the district court rejected the sentences recommended in the plea agreement. In the 2013 case, the district court revoked Ludes' probation and reinstated the underlying sentence of 10 months in prison. In the 2014 case, the court gave the standard Guidelines sentence of 12 months in prison and 12 months of postrelease supervision and ordered the sentence to run consecutive to the sentence in the 2013 case. After imposing the sentence, the court emphasized Ludes' history in stating:

"And at some point, Ms. Ludes, you will learn that you've got to change your behavior and stop your actions. . . . Well you haven't gotten it up to this point, and you're not going to probably get it unless you learn that you're going to be serving your sentences."

Ludes timely appeals, contending the State breached the plea agreement, that the district court abused its discretion in revoking her probation, and that the district court

violated her constitutional rights by using her prior convictions in calculating her criminal history score.

*Mootness*

Before reaching Ludes' claims of error, we address the preliminary issue of mootness. After the briefs were filed but before oral argument was heard, we ordered Ludes to show cause why this case should not be dismissed as moot because Ludes challenges only her sentence and it appeared from the record that Ludes had been released from imprisonment. Ludes responded, acknowledging that she had completed her incarceration and was serving postrelease supervision.

Ludes contends her appeal is not moot, however, for two related reasons: (1) she is still on postrelease supervision, so she has not completed her sentence in its entirety; and (2) she seeks specific performance of the plea agreement at a new sentencing/probation revocation disposition hearing, in which relief could still be granted. Ludes maintained the same position at oral argument.

Our court does not view mootness as jurisdictional, but as a court policy to be enforced.

"Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). This is a court policy recognizing the judiciary's role to 'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' *Board of Johnson County Comm'rs v. Duffy,* 259 Kan. 500, 504, 912 P.2d 716 (1996). The mootness test has been described as a determination whether "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for

5

any purpose, and it would not impact any of the parties' rights. [Citation omitted.]"' *Montgomery*, 295 Kan. at 840-41." *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014).

Although several exceptions to the mootness doctrine have been established, Ludes does not rely on any of them. See *State v. Montgomery*, 295 Kan. 837, Syl. ¶¶ 2, 4, 286 P.3d 866 (2012) (explaining the concrete collateral consequences exception and the exception for matters capable of repetition and raises concerns of public importance; dismissing appeal as moot because Montgomery had completed his sentence, thus the State had no authority to punish or supervise him).

We do not agree with Ludes that the mere fact of being on postrelease supervision necessarily saves Ludes' appeal from being moot. Our cases demonstrate this is not so. See *State v. Nicolaides*, No. 114,239, 2016 WL 3856612, at *3 (Kan. App. 2016) (unpublished opinion) (finding defendant's probation revocation appeal moot where defendant had been released from imprisonment but was still on postrelease supervision); *State v. Her*, No. 112,815, 2016 WL 3365755, at *4. (Kan. App. 2016) (unpublished opinion) (finding defendant's challenge to his criminal history moot because defendant had served the prison portion of his sentence and resentencing could not affect his postrelease supervision); *Dunn v. State*, No. 104,853, 2011 WL 2206640, at * 1 (Kan. App. 2011) (unpublished opinion) (finding Dunn's claim that the State breached the plea agreement moot because Dunn had completed the prison aspect of his sentence although he was still on postrelease supervision).

Ludes does not contend that her term of postrelease supervision could be abbreviated if she prevails on this appeal. Because she received a 12-month period of postrelease supervision, which is the statutory minimum, see K.S.A. 2015 Supp 22-3717(d)(1)(C), remand and resentencing could not shorten that period. See *United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007) (finding that defendant's appeal was

rendered moot upon his release from prison because even if the case were remanded, there was no possibility that the district court could impose a reduced term of supervised release; defendant had initially been sentenced to the minimum period of supervised release permitted by statute and district court could not impose lesser term).

Ludes does not tell us why being on postrelease supervision saves her appeal from mootness. The thrust of her argument is that she should be resentenced to probation, yet she does not show how being on probation is meaningfully different from or preferable to being on postrelease supervision. She does not show that the terms and conditions of one is better than another. Nor does she show that if she were on probation and probation were revoked, the result would be more favorable to her. If Ludes were to receive a new sentence of probation in the 2013 case, and violate her probation, the district court would theoretically revoke her probation and reinstate the underlying sentence of 10 months in prison. Ludes has now served 2 months of postrelease supervision and if she violates her supervision and is revoked, she will have to serve the remainder of her underlying 12-month sentence, *i.e.*, approximately 10 months. See K.S.A. 2015 Supp. 22-3716; K.S.A. 2015 Supp. 75-5217 (requiring a defendant to serve postrelease supervision time in custody after violating the terms of postrelease supervision). The effect of revocation has thus not been shown to be demonstrably different whether she is on probation or postrelease supervision.

In any event, it appears that any collateral consequence of Ludes being on probation rather than on postrelease supervision would not be a concrete consequence that is sure to follow, which could save her case from mootness, but merely a hypothetical consequence that is a mere possibility, which would not save her case from mootness. See *Montgomery*, 295 Kan. at 843, citing *Spencer v. Kemna*, 523 U.S. 1, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) (distinguishing between those two types of collateral consequences).

We also fail to believe that Ludes' desired relief of specific performance saves her appeal from mootness. Specific performance is, of course, generally an appropriate remedy when the State breaches a plea agreement. See *State v. Peterson*, 296 Kan. 563, 567, 293 P.3d 730 (2013) (describing resentencing in front of a different judge as one of two typical remedies, the other being withdrawal of the plea). But Ludes has shown no authority that imposing this remedy could be appropriate here, where she has already served her entire underlying sentence and the only goal in having the State comply with the plea agreement is to put her on probation. Any recommendation of probation by the State would be ineffective, as addressed below. See *Bomasuto v. Perlman*, 680 F. Supp. 2d 449, 457 (W.D.N.Y. 2010) (finding appeal moot by defendant's release from custody during the pending of the habeas petition because the only remedy he sought was specific performance of the trial court's original sentence promise of 5 years).

Ludes, in her responses to our show cause order, is careful to frame her desired relief as solely receiving a new hearing at which the State would make the recommendation of probation as it agreed to do in the plea agreement. The logical extension of this argument is that a claim that the State breached its plea agreement may never be found moot because the defendant merely seeks a new hearing, which the court has the authority to order. But cases demonstrate this is not so.

> "Lastly, Juan Alcala-Velasquez argues that the Government breached its plea agreement. We agree. Such error is not harmless, *United States v. Myers*, 32 F.3d 411, 413 (9th Cir.1994), and ordinarily requires us to vacate the sentence and remand for resentencing to a different judge. *See United States v. Johnson*, 187 F.3d 1129, 1136 (9th Cir.1999). However, because the district court sentenced Juan Alcala-Velasquez to the statutory mandatory minimum, which is the sentence that must be imposed if we were to remand, we conclude that this claim is moot. *See Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998) (explaining that an issue is moot when the injury complained of cannot be 'redressed by a favorable judicial decision'). Accordingly, we

8

dismiss this claim." *United States v. Alcala-Velasquez*, 142 Fed. Appx. 966, 967-68 (9th Cir. 2005) (unpublished opinion).

See *Dunn*, 2011 WL 2206640, at *1 (finding Dunn's claim that the State breached the plea agreement moot because Dunn had completed the prison aspect of his sentence although he was still on postrelease supervision); see also *Lewis v. State Through Dept. of Public Safety & Corrections*, 602 So. 2d 68, 74 (La. App.) (1992) ("At the time Lewis sought specific performance of his state plea bargain in state court, he had already served his state sentence, and the State had no authority to compel the federal authorities to give him credit for his state time on his federal sentence. In this procedural posture, the State could not give specific performance and the question of granting that remedy was moot.").

These cases demonstrate that the relief of specific performance involves not merely obtaining a new sentencing hearing, but obtaining a new sentencing hearing at which the outcome could benefit the defendant. "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatsoever to a prevailing party, we should dismiss the case as moot rather than issue an advisory opinion. See *Smith v. Martens*, 279 Kan. 242, 244-45, 106 P.3d 28 (2005)." *In re N.A.C.*, 49 Kan. App. 2d 699, 716, 316 P.3d 771 (2013), *rev'd on other grounds and appeal dismissed* 299 Kan. 1100, 329 P.3d 458 (2014). Compare *State v. Zirkle*, 15 Kan. App. 2d 674, 676-77, 814 P.2d 452 (1991) (finding appeal of parolee's challenge to the length of his sentence not moot because if his contentions on appeal were correct, he would be entitled to resentencing where the original sentence or a lesser sentence would be imposed), with *State v. Brown*, No. 112,825, 2015 WL 9286987, at *4 (Kan. App. 2015) (unpublished opinion) (dismissing appeal because "Brown has completely served the confinement portion of his sentence, any remand for resentencing would be ineffectual for any purpose"); see *Lee v. State*, No. 106,274, 2012 WL 2476991, at *2 (Kan. App. 2012) (unpublished opinion) ("Given Lee successfully has completed his

9

probation, the appeal of his probation revocation seeks a judgment upon a matter which, if rendered, could not have any practical effect upon any existing controversy.").

Although the Kansas Supreme Court cases have not examined whether a defendant's claim of breach of a plea agreement is moot under these circumstances, the cases in which the court has remanded for a new hearing due to the State's breach of a plea agreement demonstrate the underlying premise that the outcome of the new hearing could somehow benefit the defendant. See, *e.g.*, *State v. Jones*, 302 Kan. 111, 114, 351 P.3d 1228 (2015) (Jones was sentenced to 59 months' imprisonment, the mid-range term in the applicable grid box, and 36 months' postrelease supervision); *Peterson*, 296 Kan. at 563-64 (Peterson was sentenced to 52 months in prison, with lifetime postrelease supervision); *State v. Urista*, 296 Kan. 576, 581-82, 293 P.3d 738 (2013) (Urista was subject to a controlling sentence of 204 months). None of these cases examined facts similar to those here, where the court's judgment would not affect the outcome of the parties' controversy. See *Manly v. City of Shawnee*, 287 Kan. 63, Syl. ¶ 4, 194 P.3d 1 (2008) (finding an issue is moot when the court's judgment would not affect the outcome of the parties' controversy).

We apply those principles to our determination in this case. Let us assume solely for purposes of argument that the State breached its plea agreement in this case, thus the appropriate remedy is to vacate the sentence and remand for a new sentencing hearing with directions that the State comply with the provisions of the plea agreement. Ludes envisions a new sentencing hearing/probation revocation disposition hearing at which the State would recommend probation in her 2014 case and would recommend a 120-day dunk for her probation violation in her 2013 case.

That is a recommendation the State cannot make, given the intervening events. When a defendant violates her probation, the ultimate sanction is revocation of probation and imposition of the underlying sentence. But if Ludes were to violate her probation, as

she has done repeatedly in the past, the State could not employ the sanction of revocation because Ludes has already served her full underlying sentence. Surely the district court could not require Ludes to serve her underlying sentence again. Thus Ludes would lack the substantive incentive to comply with the terms and conditions of her probation, yet the State would have no full sanction in the event she violated them. To remand for a new hearing in this case would require the parties and the district court to engage in a futile act—something the law does not require. See *Anderson v. Dugger*, 130 Kan. 153, 156, 285 P. 546 (1930) ("the law does not require the performance of a futile or useless act."). Because the State cannot give specific performance, the question of granting the remedy Ludes seeks is moot.

In so ruling, we make no finding of whether any breach by the State is harmless. See *Urista*, 296 Kan. at 594-95 (finding "if the State breaches its plea agreement promise—*and the defendant raises a timely objection to the breach*—such a breach will constitute harmless error only if a court can say beyond a reasonable doubt that the State's promise had little, if any, influence on the defendant's decision to enter into the plea agreement") (Emphasis added.). Here, Ludes did not raise a timely objection to any breach, and the State has not alleged harmless error. We merely find Ludes' claim moot because it cannot be redressed by a favorable judicial decision.

Accordingly, we dismiss this case as moot and do not reach the remaining issues.

Appeal dismissed.

\* \* \*

ARNOLD-BURGER, J., concurring: I agree with my colleagues that the issues raised in this case are moot, but I write separately simply to outline more specifically why I believe that to be so.

11

Christine Ludes was convicted of felony theft in 14-CR-866 (2014 case), while she was on probation for another felony theft, 13-CR-1160 (2013 case). It is important to outline what happened on each of those cases to understand why we cannot provide Ludes any relief—even if we agreed that the State violated the plea agreement in this case. I will examine each in turn.

*The 2013 Case*

Ludes was convicted of felony theft, a severity level 9 nonperson felony for an offense that occurred on November 30, 2013. See K.S.A. 2015 Supp. 21-5801(b)(6). Based on the severity level of the offense and her criminal history of E, the revised Kansas Sentencing Guidelines Act (KSGA) provided that her case was presumptive probation, with a 10-month mid-range sentence. K.S.A. 2015 Supp. 21-6804(a). As a presumptive probation case, the court was required to impose the prison term and the duration of probation. K.S.A. 2015 Supp. 21-6804(e)(3). The judge sentenced her to 10 months in prison and gave her 12 months of probation. The judge also sentenced her to 12 months of postrelease supervision. Clearly, one generally does not usually get both probation and postrelease supervision. But K.S.A. 2015 Supp. 22-3716(f) provides that on a felony committed after July 1, 2013, if a nonprison sanction is revoked, the person must be placed on a term of postrelease supervision after serving his or her underlying sentence or sanction. Probation is defined as a nonprison sanction. K.S.A. 2015 Supp. 21-6803(o). So if a person is given a nonprison sanction of probation (even if it is presumptive) and does *not* violate that probation, at the end of the probation term, if no extensions are granted during the term, the case would end, with the sentence fully satisfied. But if a felony offender violates a felony probation and he or she has served the underlying sentence or portions thereof as a sanction, the court is still required to impose a term of postrelease supervision. For a severity level 9 nondrug felony, that term is 12 months. K.S.A. 2015 Supp. 21-6608(c)(3). So the postrelease supervision term only

12

comes into play in a nonprison sentence when the defendant violates the nonprison sanction.

When Ludes violated her probation by committing another felony, the court was entitled to revoke her probation without imposing any intermediate sanctions. K.S.A. 2015 Supp. 22-3716(c)(8). But the plea agreement set forth a recommendation by the State of a 120-day sanction. See K.S.A. 2015 Supp. 22-3716(c)(1)(C). Regardless of the sanction, serving the full 10 months or only 120 days, K.S.A. 2015 Supp. 22-3716(f) required that Ludes serve a 12-month postrelease supervision term at the completion of her period of incarceration. Not only was this the amount already ordered by the court, but 12 months is the minimum postrelease supervision period that is allowed by statute. See K.S.A. 2015 Supp. 22-3717(d)(1)(C); K.S.A. 2015 Supp. 21-6608(c)(3).

So we next must ask what would happen if we found that Ludes was right and the State violated the plea agreement? We would remand the case for resentencing. But even if Ludes' served an unnecessarily long prison sentence because of the violation of the plea agreement, the excess time of incarceration could not be applied to reduce a mandatory period of postrelease supervision. See *State v. Gaudina*, 284 Kan. 354, 368, 160 P.3d 854 (2007); *State v. Reed*, No. 113,845, 2016 WL 2775148, at *2 (Kan. App. 2016) (unpublished opinion); *State v. Brown*, No. 112,825, 2015 WL 9286987, at *3-4 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* January 14, 2016; *State v. Dunn*, No. 111,283, 2015 WL 2414362, at *2 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016). Accordingly, because it is undisputed that Ludes has served the prison portion of her sentence and her postrelease supervision could not be less than 12 months, the district court could not provide her any relief on resentencing. Ludes' claim on the 2013 case is, therefore, moot.

*The 2014 Case*

This was also a felony theft, severity level 9 nonperson felony, but because Ludes committed the offense while she was on probation and she had three prior felony thefts, the KSGA required a presumptive prison sentence. K.S.A. 2015 Supp. 21-5801(b)(6); K.S.A. 2015 Supp. 21-6604(f)(1); K.S.A. 2015 Supp. 21-6804(p); K.S.A. 2015 Supp. 22-3716(c)(5). With a criminal history score of C, her mid-range sentence was 12 months. K.S.A. 2015 Supp. 21-6804(a). So in order for the court to give Ludes probation, it had to grant a dispositional departure. See K.S.A. 2015 Supp. 21-6815(a). It did not do so in this case and instead sentenced her 12 months in prison and 12 months of postrelease supervision. The sentence was ordered to run consecutive to the sentence in her 2013 case, which the court was also required to do under K.S.A. 2015 Supp. 21-6606(c).

In a multiple conviction case, which we have here, even if the sentences are ordered to run consecutively, a person is only required to serve one postrelease supervision term, the longest one assessed on the various convictions. See K.S.A. 2015 Supp. 21-6819(b)(1). Ludes is already serving 1-year postrelease supervision on the 2013 case, so the 2014 case adds nothing to her term of postrelease supervision. She has already served the 12 months in prison. If we were to remand for specific performance on the plea agreement and the judge followed the plea agreement, she would get a nonprison sanction, probation, on her 2014 case. She would not have to serve a term of postrelease supervision unless she violated her probation and had to serve her term. Since she has served the whole 12 months, apparently with no violations, the 2014 case is over, closed, and finished. A postrelease supervision term is already being served as part of the 2013 case and that would not be increased or decreased by any resentencing in this case. So Ludes' 2014 case is also moot.